**Heather Sue MERCER,**
**Plaintiff–Appellant,**

v.

**DUKE UNIVERSITY; Fred Goldsmith,**
**Defendants–Appellees.**

No. 99–1014.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1999.

Decided July 12, 1999.

---

**644**

**ARGUED:** Burton Craige, Patterson, Harkavy & Lawrence, L.L.P., Raleigh, North Carolina, for Appellant. John Morgan Simpson, Fulbright & Jaworski, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Melinda Lawrence, Patterson, Harkavy & Lawrence, L.L.P., Raleigh, North Carolina, for Appellant. Karen M. Moran, Michelle C. Ciszak, Fulbright & Jaworski, L.L.P., Washington, D.C., for Appellees.

Before LUTTIG and KING, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge LUTTIG wrote the opinion, in which Judge KING and Senior Judge BUTZNER joined.

## OPINION

LUTTIG, Circuit Judge:

Appellant Heather Sue Mercer challenges the federal district court's holding that Title IX provides a blanket exemption for contact sports and the court's consequent dismissal of her claim that Duke University discriminated against her during her participation in Duke's intercollegiate football program. For the reasons that follow, we hold that where a university has allowed a member of the opposite sex to try out for a single-sex team in a contact sport, the university is, contrary to the holding of the district court, subject to Title IX and therefore prohibited from discriminating against that individual on the basis of his or her sex.

### I.

Appellee Duke University operates a Division I college football team. During the period relevant to this appeal (1994–98), appellee Fred Goldsmith was head coach of the Duke football team and appellant Heather Sue Mercer was a student at the school.

Before attending Duke, Mercer was an all-state kicker at Yorktown Heights High School in Yorktown Heights, New York. Upon enrolling at Duke in the fall of 1994, Mercer tried out for the Duke football team as a walk-on kicker. Mercer was the first—and to date, only—woman to try out for the team. Mercer did not initially make the team, and instead served as a manager during the 1994 season; however, she regularly attended practices in the fall of 1994 and participated in conditioning drills the following spring.

In April 1995, the seniors on the team selected Mercer to participate in the Blue–White Game, an intrasquad scrimmage played each spring. In that game, Mercer

kicked the winning 28–yard field goal, giving the Blue team a 24–22 victory. The kick was subsequently shown on ESPN, the cable television sports network. Soon after the game, Goldsmith told the news media that Mercer was on the Duke football team, and Fred Chatham, the Duke kicking coach, told Mercer herself that she had made the team. Also, Mike Cragg, the Duke sports information director, asked Mercer to participate in a number of interviews with newspaper, radio, and television reporters, including one with representatives from "The Tonight Show."

Although Mercer did not play in any games during the 1995 season, she again regularly attended practices in the fall and participated in conditioning drills the following spring. Mercer was also officially listed by Duke as a member of the Duke football team on the team roster filed with the NCAA and was pictured in the Duke football yearbook.

During this latter period, Mercer alleges that she was the subject of discriminatory treatment by Duke. Specifically, she claims that Goldsmith did not permit her to attend summer camp, refused to allow her to dress for games or sit on the sidelines during games, and gave her fewer opportunities to participate in practices than other walk-on kickers. In addition, Mercer claims that Goldsmith made a number of offensive comments to her, including asking her why she was interested in football, wondering why she did not prefer to participate in beauty pageants rather than football, and suggesting that she sit in the stands with her boyfriend rather than on the sidelines.

At the beginning of the 1996 season, Goldsmith informed Mercer that he was dropping her from the team. Mercer alleges that Goldsmith's decision to exclude her from the team was on the basis of her sex because Goldsmith allowed other, less qualified walk-on kickers to remain on the team. Mercer attempted to participate in conditioning drills the following spring, but Goldsmith asked her to leave because the drills were only for members of the team.

Goldsmith told Mercer, however, that she could try out for the team again in the fall.

On September 16, 1997, rather than try out for the team again, Mercer filed suit against Duke and Goldsmith, alleging sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, and negligent misrepresentation and breach of contract in violation of North Carolina law. Duke and Goldsmith filed a motion to dismiss for failure to state a claim under Title IX, and, after discovery was completed, Duke and Goldsmith filed additional motions for summary judgment and a motion to dismiss for lack of subject-matter jurisdiction. On November 9, 1998, the district court granted the motion to dismiss for failure to state a claim under Title IX, and dismissed the state-law claims without prejudice, refusing to exercise supplemental jurisdiction over those claims. The district court declined to rule on any of the other outstanding motions. The district court subsequently denied Mercer's motion to alter judgment.

From the district court's order dismissing her Title IX claim for failure to state a claim upon which relief can be granted and its order denying the motion to alter judgment, Mercer appeals.

## II.

Title IX prohibits discrimination on the basis of sex by educational institutions receiving federal funding. *See* 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...."). Soon after enacting Title IX, Congress charged the Department of Health, Education, and Welfare (HEW) with responsibility for developing regulations regarding the applicability of Title IX to athletic programs. *See* Pub.L. No. 93–380, § 844, 88 Stat. 484 (1974). Acting upon that charge, HEW duly promulgated 34 C.F.R.

§ 106.41, which reads in relevant part as follows:

Athletics.

(a) General. No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

(b) Separate teams. Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try out for the team offered unless the sport involved is a contact sport. For the purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact.

34 C.F.R. § 106.41(a)-(b).[1] The district court held, and appellees contend on appeal, that, under this regulation, "contact sports, such as football, are specifically excluded from Title IX coverage." We disagree.

Subsections (a) and (b) of section 106.41 stand in a symbiotic relationship to one another. Subsection (a) establishes a baseline prohibition against sex discrimination in intercollegiate athletics, tracking almost identically the language in the parallel statutory provision prohibiting discrimination by federally funded educational institutions. In addition to generally barring discrimination on the basis of sex in intercollegiate athletics, subsection (a) specifically prohibits any covered institution from "provid[ing] any such athletics separately on such basis."

Standing alone, then, subsection (a) would require covered institutions to integrate all of their sports teams. In order to avoid such a result—which would have radically altered the face of intercollegiate athletics—HEW provided an explicit exception to the rule of subsection (a) in the first sentence of subsection (b), allowing covered institutions to "operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." By its terms, this sentence permits covered institutions to operate separate teams for men and women in many sports, including contact sports such as football, rather than integrating those teams.

The first sentence of subsection (b), however, leaves unanswered the question of what, if any, restrictions apply to sports in which a covered institution operates a team for one sex, but operates no corresponding team for the other sex. HEW addressed this question in the second sentence of subsection (b).

This second sentence is applicable only when two predicate criteria are met: first, that the institution in question "operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex," and second, that "athletic opportunities for members of that sex have previously been limited." In this case, appellees do not dispute that athletic opportunities for women at Duke have previously been limited, and thus we assume that the second condition has been met. Further, we assume, without deciding, that Duke operated its football team "for members of one sex"—that is, for only men—but did not operate a separate team "for members of the other sex," and therefore

---

1. See also 45 C.F.R. § 86.41(a)-(b) (same).

that the first condition has also been satisfied.[2] Thus, insofar as the present appeal is concerned, we consider the predicate conditions to application of the sentence to have been met.

Provided that both of the conditions in the protasis of the second sentence of subsection (b) have been met, the apodosis of the sentence requires that "members of the excluded sex must be allowed to try out for the team offered unless the sport involved is a contact sport." The text of this clause, on its face, is incomplete: it affirmatively specifies that members of the excluded sex must be allowed to try out for single-sex teams where no team is provided for their sex except in the case of contact sports, but is silent regarding what requirements, if any, apply to single-sex teams in contact sports. As to contact sports, this clause is susceptible of two interpretations. First, it could be read to mean that "members of the excluded sex must be allowed to try out for the team offered unless the sport involved is a contact sport, *in which case the anti-discrimination provision of subsection (a) does not apply at all.*" Second, it could be interpreted to mean that "members of the excluded sex must be allowed to try out for the team offered unless the sport involved is a contact sport, *in which case members of the excluded sex need not be allowed to try out.*"

Appellees advocate the former reading, arguing that HEW intended through this clause to exempt contact sports entirely from the coverage of Title IX. We believe, however, that the latter reading is the more natural and intended meaning. The second sentence of subsection (b) does not purport in any way to state an exemption,

whether for contact sports or for any other subcategory, from the general anti-discrimination rule stated in subsection (a). And HEW certainly knew how to provide for a complete exemption had it wished, Congress itself having provided a number of such exemptions in the very statute implemented by the regulation. Rather, the sentence says, and says only, that covered institutions must allow members of an excluded sex to try out for single-sex teams in non-contact sports. Therefore, the "unless" phrase at the end of the second clause of the sentence cannot (logically or grammatically) do anything more than except contact sports from the tryout requirement that the beginning of the second clause of the sentence imposes on all other sports.

Contrary to appellees' assertion, this reading of the regulation is perfectly consistent with the evident congressional intent not to require the sexual integration of intercollegiate contact sports. If a university chooses not to permit members of the opposite sex to tryout for a single-sex contact-sports team, this interpretation respects that choice. At the same time, however, the reading of the regulation we adopt today, unlike the one advanced by appellees, ensures that the likewise indisputable congressional intent to prohibit discrimination in all circumstances where such discrimination is unreasonable—for example, where the university itself has voluntarily opened the team in question to members of both sexes—is not frustrated.

We therefore construe the second sentence of subsection (b) as providing that in non-contact sports, but not in contact sports, covered institutions must allow

2. At various points in the record, Duke appears to concede that its football team was open to women during the relevant time period. *See, e.g.,* J.A. at 70–72, 91, 99–100. What is unclear, however, is whether the Duke football team was "for" only men, with women allowed to try out, or was "for" both men and women. If the football team was "for" both men and women, then subsection (b) is simply inapplicable, and Duke was subject to the general anti-discrimination rule in

subsection (a). It may well be,on the facts as we understand them, that, at the summary-judgment or trial stage of the litigation, appellant can conclusively establish that Duke operated its football team "for" both men and women; however, appellant does not allege in her complaint that Duke operated such a team and therefore we proceed to address the possibility that Duke operated its football team "for" only men.

members of an excluded sex to try out for single-sex teams. Once an institution has allowed a member of one sex to try out for a team operated by the institution for the other sex in a contact sport, subsection (b) is simply no longer applicable, and the institution is subject to the general anti-discrimination provision of subsection (a). To the extent that the Third Circuit intended to hold otherwise in *Williams v. School Dist. of Bethlehem, Pa.*, 998 F.2d 168, 174 (3d Cir.1993), with its lone unexplained statement that, "[i]fit is determined that [a particular sport] is a contact sport, no other inquiry is necessary because that will be dispositive of the title IX claim," we reject such a conclusion as inconsistent with the language of the regulation.

Accordingly, because appellant has alleged that Duke allowed her to try out for its football team (and actually made her a member of the team), then discriminated against her and ultimately excluded her from participation in the sport on the basis of her sex, we conclude that she has stated a claim under the applicable regulation, and therefore under Title IX. We take to heart appellees' cautionary observation that, in so holding, we thereby become "the first Court in United States history to recognize such a cause of action." Br. of Appellees at 20. Where, as here, however, the university invites women into what appellees characterize as the "traditionally all-male bastion of collegiate football," *id.* at 20 n. 10, we are convinced that this reading of the regulation is the only one permissible under law.

The district court's order granting appellees' motion to dismiss for failure to state a claim is hereby reversed, and the case remanded for further proceedings.

*REVERSED AND REMANDED*